**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| ASCH WEBHOSTING, INC., : | |
| : | CIVIL ACTION NO. 04-2593 (MLC) |
| Plaintiff, : | |
| : | **MEMORANDUM OPINION** |
| v. : | |
| : | |
| ADELPHIA BUSINESS SOLUTIONS : | |
| INVESTMENT, LLC, : | |
| : | |
| Defendant. : | |

**COOPER, District Judge**

Defendant, Adelphia Business Solutions Investment, LLC (a/k/a "Telcove") ("defendant") moves for summary judgment in its favor on the ground that plaintiff Asch Webhosting, Inc.'s ("plaintiff") claim for consequential damages is barred by the express terms of the parties' contract. (Dkt. entry no. 63.) Plaintiff opposes the motion. (Dkt. entry no. 66.) For the following reasons, the Court will grant the motion.

**BACKGROUND**

The parties are familiar with the background here. (See dkt. entry no. 56, 3-31-06 Mem. Op.) Plaintiff entered into a three-year agreement ("Agreement") with defendant in December 2003, which provided that defendant would supply plaintiff with internet services for a monthly fee. (Id. at 1.) The plaintiff began using defendant's internet services in February 2004. (Id.) Defendant sent a letter to plaintiff dated April 28, 2004,

informing plaintiff that it was terminating the Agreement due to alleged violations of the Agreement's Acceptable Use Policy, effective at noon on April 30, 2004. (Id. at 2.) After a phone call with plaintiff's counsel, defendant agreed to continue providing internet services to plaintiff. (Id.) According to defendant, they agreed to provide a one month extension in order for plaintiff to procure services from another internet provider. (Id. at 2, n.1.) Plaintiff, however, argues the parties did not limit the extension of service to only thirty days. (Id.) Plaintiff brought this action on June 3, 2004, alleging, inter alia, defendant breached the Agreement by terminating the internet services to plaintiff without proper notice or adequate justification. (Id. at 2.) Plaintiff seeks $ 1.4 million in consequential damages due to the loss in business as a result of the Agreement's termination. (Dkt. entry no. 64, Affidavit of Thomas G. Rohback ("Rohback Aff."), Ex. 6.)

**DISCUSSION**

**I.   Legal Standards**

    **A.   Summary Judgment Standard**

Rule 56(c) provides that summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

2

Fed.R.Civ.P. 56(c). The party moving for summary judgment bears the initial burden of showing that there is no genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the movant has met this prima facie burden, the non-movant "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). A non-movant must present actual evidence that raises a genuine issue of material fact and may not rely on mere allegations. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

The Court must view the evidence in the light most favorable to the non-movant when deciding a summary judgment motion. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). At the summary judgment stage, the Court's role is "not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249. Under this standard, the "mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient [to defeat a Rule 56(c) motion]; there must be evidence on which the jury could reasonably find for the [non-movant]." Id. at 252. "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."

Id. at 247-48 (emphasis in original).  A fact is material only if it might affect the action's outcome under governing law.  Id. at 248.  "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  Id. at 249-50 (internal citations omitted).

    B.    **Contract Interpretation & Exculpatory Clause**

"New Jersey's fundamental rule of contract interpretation is that the court is to ascertain the parties' intent from what was written and the surrounding circumstances."  Carter v. Exxon Co. USA, 177 F.3d 197, 206 (3d Cir. 1999).  "Contract provisions are to be interpreted so as to give each provision meaning, rather than rendering some provisions superfluous."  Id. at 206.  "In a commercial setting, the judiciary will not undertake the writing of a different or better contract between the parties."  Chem. Bank of N.J. Nat'l Assoc. v. Bailey, 296 N.J.Super. 515, 527 (App. Div. 1997) (cites and quotes omitted).

"Whereas a liquidated damages clause attempts to fairly estimate the parties' likely damages in case of breach, an exculpatory clause 'denies liability for all but a nominal amount of damages.'"  Morgan Home Fashions, Inc. v. UTI, U.S., Inc., No. 03-0772, 2004 WL 1950370, at *7 n.6 (D.N.J. Feb. 9, 2004) (quoting Tessler & Son, Inc. v. Sonitrol Sec. Sys. of N. N.J.,

4

Inc., 203 N.J.Super. 477, 482 (App. Div. 1985)).  "Under New Jersey law, exculpatory clauses in private contracts are generally enforceable unless a party to the contract is either under a public duty entailing the exercise of care . . . or if there is unequal bargaining power between the parties."  St. Paul Fire & Marine Ins. Co. v. Wells Fargo Alarm Servs., No. 95-712, 1995 WL 306642, at *2 (D.N.J. May 9, 1995); see Mayfair Fabrics v. Henly, 48 N.J. 483, 487 (1967) (noting "exculpatory clauses in private agreements are generally sustained," if "they do not adversely affect the public interest").  When interpreting an exculpatory clause:

> the central question is not whether the parties agreed to insure against loss the risks they severally assumed inter sese but, rather, whether they so clearly allocated the risks that each party knew, or should have known, the existence of its contingent liability and was thus placed in a position where it could protect itself against such loss by adequate insurance coverage or otherwise.

Chem. Bank of N.J., 296 N.J.Super. at 527.[1]

"Exculpatory clauses are more commonly upheld in the commercial context."  Id.  An exculpatory clause is not invalid "when the clause is part of a simple commercial transaction

---

[1] New Jersey state common law contract analysis and U.C.C. analysis on the issues of waiver, interpretation, unconscionability, and consequential damages lead to the same result.  Carter, 177 F.3d at 206 n.6; see Stanley A. Klopp, Inc. v. John Deere Co., 510 F.Supp. 807, 809 (E.D. Pa. 1981) (noting the law developed under the U.C.C.'s unconscionability standard generally applicable in state common law contract analysis).

5

between two businesses with the freedom to negotiate." <u>Morgan Home Fashions</u>, 2004 WL 1950370, at *6.  The Court, however, "will examine exculpatory clauses to ensure that their enforcement is just.  Any provision limiting liability . . . must be written in plain and clear language, entered into by equal bargaining partners, and not run contrary to the public interest." <u>Id.</u> at *4.  "The clause cannot protect a party from its gross negligence, . . . nor can it be unconscionable." <u>Id.</u>  Where "the actions of the Defendant amount[] to gross negligence or an intentional tort, that single fact would supersede any contractual limitation of liability." <u>Id.</u> at *5; <u>see</u> <u>St. Paul Fire & Marine Ins. Co.</u>, 1995 WL 306642 at *3 (discussing "what degree of conduct" vitiates a defendant's reliance on the exculpatory clause under New Jersey law).

Unconscionability is a question of law for the Court to decide.  <u>See</u> N.J.S.A. § 12A:2-302.  "There is no hard and fast definition of unconscionability," but the "standard of conduct that the term implies is a lack of good faith, honesty in fact, and observance of fair dealing." <u>Lucier v. Williams</u>, 366 N.J. Super. 485, 492 (App. Div. 2004).  In determining whether a contract is unconscionable, the Court focuses on "the bargaining power of the parties, the conspicuousness of the putative unfair term, and the oppressiveness and unreasonableness of the term." <u>Carter</u>, 177 F.3d at 207 (holding contract unconscionable to the

6

extent that it shielded defendant from damages resulting from its failure to repair or replace gas tanks within a reasonable time). "Unconscionability hinges on a finding of an imbalance of power and unreasonable contractual terms." Morgan Home Fashions, 2004 WL 1950370, at *7.

"[E]very contract in New Jersey contains an implied covenant of good faith and fair dealing." Sons of Thunder, Inc. v. Borden, Inc., 148 N.J. 396, 420 (1997); Lithuanian Comm. Corp., Ltd. v. Sara Lee Hoisery, 179 F.R.D. 450, 482 (D.N.J. 1998) (stating same). The U.C.C. defines good faith as "honesty in fact and the observance of reasonable commercial standards of fair dealing in the trade." N.J.S.A. § 12A:2-103(1)(b). The implied covenant of good faith and fair dealing "requires that each party perform in good faith and that neither party will interfere with or destroy the other's reasonable expectations under the contract." Dana Transp., Inc. v. Ableco Fin., LLC, No. 04-2781, 2005 WL 2000152, at *3 (D.N.J. Aug. 17, 2005).

## II. Analysis

At issue in this summary judgment motion is whether the exculpatory clause in the Agreement precludes plaintiff's claim for consequential damages. The "Warranties/Disclaimers" provision in the parties' Agreement provides:

> **CUSTOMER RELEASES TELCOVE [defendant] FROM ALL LIABILITY OR RESPONSIBILITY FOR ANY DIRECT, INDIRECT, INCIDENTAL OR CONSEQUENTIAL DAMAGES, INCLUDING BUT NOT LIMITED TO DAMAGES DUE TO LOSS OF REVENUES OR LOSS OF**

> **BUSINESS, SUFFERED BY THE CUSTOMER IN CONNECTION WITH THEIR USE OF OR INABILITY TO USE THE TELCOVE INTERNET SERVICES. . . . IN NO EVENT SHALL TELCOVE'S AGGREGATE LIABILITY EXCEED THE AMOUNT PAID BY CUSTOMER TO TELCOVE FOR THE TELCOVE SERVICES.**

(Rohback Aff., Ex. 1 (emphasis in original).)  Defendant argues the exculpatory provision in the first part of the warranty paragraph "prevents [plaintiff] from recovering any of the alleged damages it seeks in this action, including, specifically, loss of business and loss of revenue."  (Def. Br., at 2-3.)  Plaintiff argues that defendant's "willful and predatory breach of contract [invalidates] the exculpatory clauses in the contract."  (Pl. Br., at 18.)

The Court finds that even viewing the facts in a light most favorable to plaintiff, the exculpatory clause is reasonable and plaintiff has demonstrated no conduct by defendant sufficient to overcome the limitations on liability expressed in the exculpatory clause.  Unlike the disclaimer at issue in Carter, the exculpatory language here is conspicuous and the language limiting defendant's liability is in bold and capital block letters.  See Carter, 177 F.3d at 207.

The Court bases its decision to enforce the exculpatory clause in large part on the fact that the Agreement was the product of a legitimate arms-length business transaction entered into between two private commercial entities.  See Morgan Home Fashions, 2004 WL 1950370, at *6, *8 (granting partial summary judgment and limiting plaintiff's claims to amount set forth in

8

exculpatory clause contained in "a private contractual agreement fairly and freely entered into and which the common law would sympathetically carry out in accordance with the contemplation of the parties").  The Court finds the limitation of liability to the amount paid by plaintiff for defendant's services is not oppressive or unreasonable, and plaintiff does not argue as much.  Carter, 177 F.3d at 208.  Moreover, the Agreement between these two private, commercial entities does not implicate any public policy or public interest concerns.  Awarding plaintiff the consequential damages in this case would circumvent the parties' intent at the time of the contract, and render the exculpatory clause "superfluous."  Id. at 206.

    The Court finds the actions of defendant in terminating the Agreement do not render the exculpatory clause void.  The evidence demonstrates that defendant terminated the Agreement based upon complaints about plaintiff "spamming" other customers of defendant, in violation of the Agreement's Acceptable Use Policy.  (See 3-31-06 Mem. Op., at 2.)  The defendant's demonstrated good faith basis for terminating the Agreement is established on this record.  Plaintiff's arguments about the accuracy of the spamming complaints do not change the Court's determination because regardless of the ultimate accuracy or veracity of the spamming complaints, defendant was entitled to rely on those complaints so long as it did so in good faith, and plaintiff has not demonstrated any bad faith by defendant.

Assuming for purposes of this motion that defendant did breach the Agreement, plaintiff's vague allegations of hidden motives and changing explanations by defendant for the termination, even if true, do not amount to "willful and wanton misconduct," "gross negligence," or violate the duty of good faith and fair dealing. Morgan Home Fashions, 2004 WL 1950370, at *5; St. Paul Fire & Marine Ins. Co., 1995 WL 306642, at *3.

The Court also finds no merit in plaintiff's sparse allegations of inequality or power imbalance between the parties. Morton Schneider, the president and sole owner of plaintiff Asch Webhosting, Inc. ("Asch"), attended law school, and since starting Asch in 1998 entered into similar contracts with at least six other internet service providers before entering into the Agreement with defendant.  (Rohback Aff., Ex. 3, at 7-8, 65.) See Morgan Home Fashions, 2004 WL 1950370, at *5 (noting that "Invalidating a contract on the basis of inequality generally takes place when one of the parties has no other choice but to accept or reject the terms of the offer as a result of a power imbalance between them").

Plaintiff's argument about lack of notice and the resulting damages is undermined by the fact that plaintiff was offered services by another internet provider for approximately one thousand dollars more than what plaintiff paid for defendant's services.  (Dkt. entry no. 68, Affidavit of Gail L. Gottehrer, Ex. 1, at 68-69.)  The Court further presumes that plaintiff

10

could have purchased insurance to cover the risk of potential damages arising out of loss of internet services.  See Morgan Home Fashions, 2004 WL 1950370, at *8 (noting that "parties presumably could have also purchased insurance to cover the risk of potential damages" and further noting that courts have enforced exculpatory clauses that limited liability to .133% of the total amount of damages).  The terms of the exculpatory provision are clear on their face and the Court will not engage in judicial revision of the parties' Agreement in order to award plaintiff consequential damages.

## CONCLUSION

Plaintiff's claim for consequential damages is precluded by the Agreement's exculpatory clause, and there is no issue of material fact as to whether defendant's actions in terminating the Agreement vitiated the exculpatory clause.  The Court will therefore grant defendant's motion for summary judgment.  The Court will issue an appropriate order and judgment.


       s/ Mary L. Cooper
       **MARY L. COOPER**
       United States District Judge